RILEY and others *against* THE HARTFORD INSURANCE
COMPANY.

Where a
policy of in-
surance up-
on vessel
and freight
of goods,
" laden, or
to be laden,"
contained a
clause valu-
ing the ves-
sel at 8000
dollars, but
leaving a
blank for
the value of
the freight,
and the pol-
icy was un-
derwritten
for " 8000
dollars on
vessel ;" and
" 2000 dol-
lars on
freight :" It
was held,
that this
was an open
policy as to
the freight.
 The con-
struction of
a policy of
insurance
on freight,
though val-
ued, is, that
freight *be-
gun to be
earned,*
either by the
lading of
goods to be
transport-
ed, or by vir-
tue of a con-
tract of

THIS was an action on a policy of insurance, on the
brig *Commerce,* on a voyage from *New-Orleans* to *Gibraltar,*
with liberty to go to *Malaga* and the *Cape de Verds,* for salt,
and back to her port of destination in the *United States;*
and " upon freight of all kinds of lawful goods and merchan-
dizes, laden, or to be laden, on board said vessel." The
policy contained the following clause : " The said vessel,
tackle, &c. for so much as concerns the assured, by agree-
ment made between the assured and assurers in this policy,
are, and shall be valued at eight thousand dollars ; and the
said goods and merchandizes hereby insured are valued at
                       without any further account to be given
by the assured to the assurers, or any of them, for the
same." At the close of the policy, immediately above the
signature of the president, were these words :

" Eight thousand dollars on vessel."
" Two thousand dollars on freight."

The *Commerce,* of which the plaintiffs were sole owners,
sailed from *New-Orleans* for *Gibraltar,* with goods on board,
estimated to be of the value of 6000 dollars, to be transport-
ed upon freight. She arrived at *Gibraltar,* in *August,* 1815,
and there delivered her cargo in safety. With part of the
freight money, the plaintiffs purchased, at *Gibraltar,* 216
quarter-casks of wine ; and the residue, being about 2000
dollars, remained on board the vessel. There were, also,
shipped on freight by other persons, for the *United States,*
87 quarter-casks of wine. The freight of the wine was
worth three dollars *per* quarter-cask. The money on board
the vessel was to have been invested, at *Cape de Verds,* in

charter-party, shall not be defeated by any of the perils insured against ; and not, that the vessel
shall take in a cargo, the freight of which shall equal the sum insured, and then, that it shall
not be lost. Therefore, where freight of goods, " laden or to be laden," was insured, to the
amount of 2000 dollars, on a voyage from *New-Orleans* to *Gibraltar,* with liberty to go to
*Cape de Verds* for salt, and back to the *United States ;* the vessel arrived at *Gibraltar,* and
delivered her outward cargo in safety ; with a part of the freight money, she purchased
there 216 quarter-casks of wine, and took on freight for other persons 87 quarter-casks more ;
and then sailed for *Cape de Verds,* for the purpose of investing the residue in salt, but before
her arrival there, she was wrecked and lost ; it was held, that the insured were entitled to
recover only the freight of the goods on board, though the freight money destined for the
purchase of salt at *Cape de Verds* was sufficient to purchase, and the capacity of the vessel
was sufficient to contain, a quantity of salt, the freight of which would exceed 2000 dollars.

*Riley*
*v.*
The Hartford
Insurance
Company.

salt, which was to have been transported thence to the *United States ;* but no contract was made for the salt. The vessel would have contained, in addition to the cargo on board, 6000 bushels ; and the money on board was sufficient to purchase that quantity ; the freight of which, from *Cape de Verds* to the *United States,* would have been worth more than 2000 dollars. On the 23d of *August,* 1815, she sailed from *Gibraltar,* with her cargo, in pursuance of the voyage mentioned in the policy, for the *Cape de Verds,* intending thence to sail to the *United States ;* but was wrecked, on the 28th of the same month, on the coast of *Africa,* near *Cape Bajador,* and was totally lost, with all the cargo on board. The plaintiffs, on hearing of the loss, abandoned to the defendants the vessel and freight, and claimed for a total loss on both. The defendants paid the amount insured on the vessel, but resisted the ~~defendants'~~ claim as to freight.

The case was reserved for the consideration and advice of the nine Judges.

*N. Smith* and *Trumbull* for the plaintiffs, contended,
1. That this was a *valued* policy on frieght : which appeared, first, from the terms of the policy, the insurance being for 2000 dollars upon the freight of goods *laden and to be laden ;* and, secondly, from the nature of the contract, the subject of it being, like profits, an interest in expectancy. *Thompson* v. *Taylor,* 6 *Term. Rep.* 478. cited as a case of a *valued* policy. 1 *Marsh. Ins.* 279. (*Condy's* edit.) *Mumford* v. *Hallett,* 1 *Johns. Rep.* 433. in connection with *Davy* v. *Hallett,* 3 *Caines* 16. 21. *Abbott* v. *Sebor,* 3 *Johns. Ca.* 39. 43, 4. *Livingston* v. *The Columbian Insurance Company,* 3 *Johns. Rep.* 49. 55.

2. That if this were an *open* policy, still it covered the freight of the salt to be taken in at *Cape de Verds,* which, with the freight of the goods on board, would exceed 2000 dollars. *Thompson* v. *Taylor,* 6 *Term Rep.* 478. *Montgomery* v. *Eggington,* 3 *Term Rep.* 362. *Horncastle* v. *Suart,* 7 *East* 400. *Mackenzie* v. *Shedden,* 2 *Campb.* 431. *The Insurance Company of North-America* v. *Jones* and *Clark,* 2 *Binn.* 563.

*T. S. Williams* and *W. W. Ellsworth,* for the defendants, denied, in the first place, that this was a valued policy, with

*Hartford,*
November,
1817.

Riley
*v.*
The Hartford
Insurance
Company.

regard to freight, it not being in the usual form of such a policy. 1 *Marsh. Ins.* 288. (*Condy's* edit.) The insurance, as it respects this subject, is simply " 2000 dollars on freight."

But, in the next place, they contended, that whether the policy was to be considered as valued or open, the defendants were liable only for the freight, which the vessel had begun to earn, and was actually earning, at the time of the loss ; and the subject of such freight must be either goods actually on board, or a contract by which the ship-owner, aside from the perils insured against, would be entitled to demand it. To this point they cited 1 *Marsh. Ins.* 92, 3. (*Condy's* edit.) *Forbes* v. *Cowie,* 1 *Camp.* 520. *Forbes* v. *Aspinall,* 13 *East* 323. They also adverted to the several cases cited by the plaintiffs' counsel, and endeavoured to distinguish them from the present case.

SWIFT, Ch. J. It has been contended, that this was a valued policy for 2000 dollars on freight, because freight is of an uncertain nature, the profits of a voyage, and cannot be ascertained. But there is no resemblance in this respect, between freight and profits ; for freight is not only susceptible of being reduced to a certainty upon a valuation according to the well-known rate from place to place ; but the ship-owner, by a contract of charter-party, may entitle himself to a specific sum, while profits, from their very nature, are uncertain. It is evident, then, that the parties, if they please, can make a valued policy on freight. But in the present case, the policy, by the express terms, is open ; for it is for " 2000 dollars on freight," without any valuation.

It is said, that the nature of the contract is, that the insurers engage that the assured shall not be prevented, by any of the perils insured against, from gaining the freight insured ; that when the risk is once commenced, and there is a loss within the policy, the assured are entitled to the whole. But on this principle, there may be an assurance of freight to any amount, and if the voyage is commenced, with a cargo of the most trifling value, and there should be a loss, the assured would be entitled to recover the whole sum insured. Such is not the nature of the contract. The construction is, that the assurers assure the sum mentioned on freight that shall once commence to be earned ; not that the

*Hartford,*
November,
1817.

Riley
*v.*
The Hartford
Insurance
Company.

vessel shall take in a cargo, the freight of which shall equal the sum insured, and then, that it shall not be lost by any of the perils insured against. From the nature of the contract the freight must exist, by having a cargo on board the vessel before the policy can attach. Where such right to freight has commenced, there is something for the policy to operate upon, and the engagement is, that such freight shall not be defeated by any of the perils insured against. If it be necessary that freight must commence to be earned before the policy can attach, then it follows, that the insurance can operate only on such freight as actually exists, and cannot operate on the freight of a cargo expected to be laden on board the vessel; for it may as well be said, that the insurance may attach when no cargo is laden on board the vessel, as on a part of the cargo not laden : and it is agreed, that if no cargo is taken in, there can be no freight on which the policy can operate.

Such appears to be the true construction of the contract arising from the terms of it ; and this is fully confirmed by the decision in the case of *Forbes* v. *Aspinall,* 13 *East* 323. The cases generally relied on by the plaintiffs, are where the ship-owner, by the contract of charter-party, became entitled to the freight ; if the voyage was not prevented by the perils insured against, and where there could be no doubt of his right to recover the whole sum on that ground.

But admitting the policy to be valued, then, on the principles adopted in the before mentioned case, the plaintiffs could not recover for any freight excepting on the goods actually on board the vessel at the time of the loss. For though the policy be valued, yet it has reference to freight on all the goods intended to be carried on the voyage insured : and if, by the perils insured against, a part only of the goods are lost, the assured can recover only in proportion; for otherwise a large sum as freight, might be recovered for a very small cargo.

I am of opinion, that the plaintiffs are entitled to recover for a partial loss only.

HOSMER, J. The defendants insured the brig *Commerce* against the common risks. They likewise underwrote " upon the *freight* of all goods, laden or to be laden on board, 2000 dollars, from *New-Orleans* to *Gibraltar,* and back to

*Hartford,*
November,
1817.

Riley
*v.*
The Hartford
Insurance
Company.

the *United States,* with liberty to go to *Malaga* and the *Cape de Verds.*" She arrived at *Gibraltar,* purchased and shipped property the freight of which was short of 2000 dollars for the *United States,* and then sailed for the *Cape* to procure salt. Had it been obtained, the freight on the whole cargo would have equalled the stipulated amount. The brig was lost on her passage, and the plaintiffs demand 2000 dollars for the insurance upon freight. It *is* admitted that the freight which the brig was actually earning at the time of her loss, must be paid ; but the payment of any thing for the freight in expectancy on the intended cargo of salt, the defendants resist.

It has been much insisted on, that the policy on freight was *valued.* To enter into this enquiry, I deem it to be unnecessary. If the freight was valued, it was upon the mutual understanding, that there would be laden on board the brig, merchandise which would produce the stipulated profit. The valuation inserted in a policy is not ideal ; it is in the nature of liquidated damages, to prevent the necessity of proving them, in the event of loss. 1 *Marsh.* 199. The policy is not conclusive as to the valuation agreed on ; it is *prima facia* evidence only of the amount of interest insured. 1 *Marsh.* 201. " The valuation, (says Lord *Ellenborough, Forbes* v. *Aspinall,* 13 *East* 327.) in the case of goods, *looks to all the goods* intended to be loaded, and in the case of freight, it looks to the *freight upon all the goods* the ship is intended to carry upon the voyage insured : and if by the perils insured against in a valued policy on goods, *part only* of the goods intended to be covered be lost, the valuation must be opened, and the insured can only recover in respect of *that part ;* and so, if by the perils insured against, the *freight* of *part only* of the goods to be carried be lost, the insured can only recover in respect of that loss, *according to the proportion which that part bears to the whole sum at which the entire freight was estimated in the valuation.*" Were not this principle adopted, the benefits derived from valuations in policies, would bear no comparison to the disadvantages to which they might, and *would* inevitably lead. Under the pretext of *valued* policies, these instruments would be the vehicle of wagers ; and instead of indemnity from actual commercial risks, they would become the accustomed mode of the most pernicious gambling. As the freight stip-

ulated in this case, and the goods laden on board, bear no reasonable proportion to each other, the policy must be considered *as open.*

The only remaining question is, *how far the plaintiffs' right to freight had commenced.* Co-extensive with this was his loss, and of consequence his right to indemnity.

Freight is sometimes applied to denote the compensation for the use of a ship, and sometimes, the compensation for the transportation of merchandise. The former happens, when there is a charter-party of affreightment, or, as is usually said, when the ship is *let to freight.* In this event, *when the vessel is hired,* so soon as the voyage is entered on, *the right to freight commences.* Let the ports of her destination be ever so numerous, if there is an entire freight for the performance of the whole voyage, there is an inchoate right to the sum agreed on for freight, so soon as the ship breaks ground. From this moment, the hire of the ship is at risk, and constitutes a legal subject of insurance. Although the charterer omits to put on board the expected merchandise, and the ship performs her voyage in ballast, the right to freight is perfected. The voyage, though divisible, is not in charter-parties usually divided. There is *one voyage,* consisting of destinations to several ports, and terminating at the place from whence the ship originally set sail. For this ve· age there is *one freight* due on its ultimate completion. This *one freight* is at risk so soon as the voyage has commenced ; and an indemnity may be given against all the losses to which it may be exposed. *Thompson* v. *Taylor,* 6 *Term. Rep.* 478. *Livingston* v. *The Columbian Insurance Company,* 3 *Johns. Rep.* 49. *Horncastle & al.* v. *Suart,* 7 *East* 400. *De Longuemere* v. *The Phœnix Insurance Company,* 10 *Johns. Rep.* 127. *De Longuemere* v. *The New-York Fire Insurance Company,* 10 *Johns. Rep.* 201. *Mackenzie* v. *Shedden,* 2 *Campb.* 431.

The freight in the case before us, was not derivable from the hire of the brig, but from the transportation of merchandise by the ship-owner. To ascertain when *the right to freight commenced,* a different criterion is necessary, than in the instance before discussed. The *right commences* when the goods are put on board ; or, at farthest, when a part have been received, and the rest are ready to be shipped. 1 *Marsh.* 192. 2 *Stra.* 1251. 3 *Term Rep.* 362. The underwriter does not

insure that the ship shall have freight, but only that the owner shall be indemnified for the loss of freight on goods put on board. *Forbes* v. *Cowie*, 1 *Campb.* 520. It matters not, whether the ship-owner contemplates the purchase of goods at a given port on which to procure a freight, with money he has in possession, or which is due to him at the place of destination, or on his personal credit. In either event, his right to freight cannot commence, until he has shipped on board the contemplated cargo.

The insured have a right to compensation for the loss of their brig, and of freight on the goods actually laden on board. Thus far an actual loss has happened; and they are entitled to the stipulated indemnity.

The other Judges were of the same opinion.

Judgment to be rendered for a partial loss; and the amount to be ascertained, pursuant to agreement of parties, by persons to be appointed for that purpose.