[PHILADELPHIA, DECEMBER 29, 1828.]

## ADAMS *against* The PENNSYLVANIA INSURANCE COMPANY.

The disappointment of a reasonable hope of obtaining a cargo for the owner of the vessel himself, at the port to which she is sailing, with specie on board to purchase a cargo, but where no cargo has been purchased, nor a positive contract made for the purchase of one, does not authorize a recovery on a valued policy on freight, where the ship is lost on the voyage to the port of destination.

*It seems,* that a gaming policy is not good in *Pennsylvania.*

THE plaintiff, *Robert Adams,* brought this action against the *Insurance Company of Pennsylvania,* on a policy of insurance dated *September* 2d, 1822, on the freight of the brig *Shamrock,*

(Adams *v.* The Pennsylvania Insurance Company.)

valued at four thousand dollars, on a voyage at and from *Gibraltar* to *Bourdeaux,* at and from thence back to *Philadelphia,* at a premium of two per cent.

The plaintiff was the owner of the *Shamrock,* which he sent to *Gibraltar* in the spring of 1822, with a cargo belonging to himself, to be sold at that place.    The letter of instructions dated *May* 9th, 1822, to the master, *R. Pickle,* was to the following effect: "Whither your course may be directed from *Gibraltar,* will depend on advices from my friends *Dowling and Sons* of *Bourdeaux.*    I have directed them, if brandies are low, to purchase four hundred pipes for your return cargo.    If high, you are to shape your course to *St. Petersburgh,* and bring home hemp and iron.    If you can get goods on freight, not to interfere with my goods, do so.    If no advices are received from *Dowling and Sons,* I leave the course to you," &c.    Many letters from the plaintiff to *Dowling and Sons,* and to the master, and some from *Dowling and Sons* to the master, were read in evidence.    The plaintiff at first directed *Dowling and Sons* to purchase for him four hundred pipes of brandy, if they could be had for two hundred and fifty francs.    In consequence, however, of the low price of brandies here, and the quantity in the market, he, in a letter to Captain *Pickle,* limited him to two hundred and forty francs, and stated that he would prefer having not more than one hundred pipes put on board on his own account, wishing the vessel to be loaded with brandy or other goods on freight.    A letter to the same effect was written by the plaintiff to *Dowling and Sons.*    Brandy fell at *Bourdeaux* to two hundred and thirty francs. No cargo was ever purchased.

The *Shamrock* sailed from *Gibraltar* for *Bourdeaux* on the 28th of *June,* without a cargo, but having on board twenty thousand dollars in specie, to purchase a cargo.    On the 7th of *July,* she was lost near *Aveiro* in *Portugal.*    One keg of specie, containing four thousand dollars, was lost, and the remainder saved.    The voyage was broken up, and the plaintiff claimed for a total loss of the freight insured.    The jury found a verdict in his favour, subject to the opinion of the court upon the whole evidence; if the opinion of the court should be with the plaintiff, judgment to be entered for the plaintiff; if with the defendants, judgment to be entered for the defendants.

*J. R. Ingersoll,* and *C. J. Ingersoll,* for the plaintiff.—This was nominally an insurance on freight.    In reality it was not so, nor was such the understanding of the parties.    The plaintiff was the owner of both vessel and cargo.    Freight is a compensation paid by the owner of the goods to the owner of the vessel for their transportation.    The term itself implies an absence of unity of person and ownership.    Yet the convenience of commerce has introduced a practice, seemingly paradoxical, but which, when understood, is productive of advantages, both to the owner and underwriter: to the owner, security, indemnity, and protection: to the insurer, an addi-

(Adams *v.* The Pennsylvania Insurance Company.)

tional subject of profitable speculation; another means of receiving a premium, and retaining it, if the adventure be prosperous, and of subdividing his average in case of loss. The owner who takes the merchandize of others, contracts to receive a compensation in freight. When he ships goods of his own, he must rely on their profits for his compensation. This is a clear, defined, and lawful interest, fairly to be calculated on, and therefore a fair subject of insurance. Such an interest is insured directly, under the name of profits, where goods are on board out of which profits may arise; or indirectly under the name of freight, which is resorted to where it is not certain whether goods will be on board or not, but where a reasonable expectation exists that such will be the case in any part of a continued voyage or series of voyages forming an entire transaction. If the voyage be interrupted by a peril insured against, the underwriter pays, though there has never been a bale of goods on board; and though if there has been, belonging to the ship owner, his goods would have paid no freight. The case before the court is of the latter description. The contract, its construction, and the judgment to be pronounced upon it, depend upon an artificial principle; not upon the ordinary rule of indemnity for loss of freight. A recovery is justified by the disappointment of a reasonable hope; by the failure of judicious calculations. If that hope be rendered abortive and those calculations vain by any of the causes which the underwriter has pledged himself shall not occur, he is responsible. This reasonable hope may rest on the possession of goods, or a temporary letting of the vessel at a price to be paid in the event of carrying merchandize, or on such a train of events, anticipated in regular succession and already begun, as in the natural and ordinary course of things, will lead to the transportation of a cargo, and the advantages which are its necessary result. Such a reasonable expectation of obtaining a cargo, existed in the present case, as to entitle the plaintiff to recover. By the letter of instructions, the proceedings of Captain *Pickle* were to depend on the advices he should receive from *Dowling and Sons*, relative to the price of brandy at *Bourdeaux*, and if it continued at two hundred and fifty francs, four hundred pipes were directed to be purchased for a return cargo. The plaintiff's letter of the 24th of *April*, 1822, to *Dowling and Sons*, informs them that the *Shamrock* will reach *Bourdeaux* in *June* or *July*, with from twenty to twenty-five thousand dollars in specie, and instructs them to purchase from two hundred and fifty to three hundred short pipes, even if the price should advance a little. In his letter of the 30th of the same month, the plaintiff writes to that house to lose no time in procuring for him four hundred pipes, unless they think brandy will be still lower. On the 6th of *May*, the plaintiff writes, that in full expectation of the receipt of the brandy, the *Shamrock* will sail on the 10th for *Gibraltar*, carrying enough to produce funds for the purchase of four hundred pipes of brandy; and in his letter of the 9th of *May*, he expresses

(Adams *v.* The Pennsylvania Insurance Company.)

a hope that his correspondents have made the purchase. On the 23d of *May*, after the *Shamrock* had sailed, he writes again, treating his former communications as an *order*, and expresses a hope that they may not have executed his *order* before receiving this letter; adding that one hundred pipes will probably be enough. His letter of the 25th of *May*, directed to Captain *Pickle* at *Gibraltar*, directs him not to go to *Bourdeaux*, unless the brandy is purchased, or can be laid in at two hundred and fifty francs. In his letter of the 31st of *May*, to the captain, he considers the voyage to *Bourdeaux* at an end, under the belief that such will be the directions of *Dowling and Sons*. Yet, in a letter dated the 6th of *June*, he recurs to his first orders, and instructs Captain *Pickle*, if the *Bourdeaux* house should invite him, to accept the invitation. On the same day he writes to that house that he does not imagine they have had it in their power to execute his last order for the *Shamrock*, or to direct that vessel to proceed to their port from *Gibraltar*, where she has gone for the purpose. They are again told that her destination is in their hands. The same idea is repeated in his letter of the 23d of *June*, in which it is added, the four hundred pipes ordered, cannot come amiss of doing well. On the 16th of *August*, Mr. *Adams* informs Messrs. *Dowling and Sons*, of the sailing of the brig with funds, their kind and disposition, the small number of vessels in port, and the low price of brandy, which he thinks will insure a full cargo, or at least four hundred pipes at two hundred and thirty francs. These letters show the desire and expectation of a cargo, orders given to procure one, and the remittance of ample funds for that purpose. His insurance on the 2d of *September*, proves his firm belief that the brandy had been procured, and the light in which he regarded the order he had given. The letters of Messrs. *Dowling and Sons*, show the acceptance of these orders, and though some doubt at first hung upon the destination of the *Shamrock*, it was removed by her actually sailing for *Bourdeaux* and not *St. Petersburgh*. In their letter of the 12th of *June*, to Captain *Pickle*, they say they hope to see him in *July*, and expect to give him quick despatch; and in that of the 22d of *June* to the plaintiff, they advert to the sailing of the brig on the 10th of *May* for *Gibraltar*, with *orders* to proceed to *Bourdeaux* with funds to purchase brandy, which they say, has fallen to two hundred and thirty francs, and may be under, and they postpone operating under the hope of getting it lower. After this correspondence, Messrs. *Dowling and Sons* would have been liable for an omission to comply with the plaintiff's orders, in case the vessel had arrived. Her arrival, however, was prevented by her loss, intelligence of which, they inform Mr. *Adams* in their letter of the 31st of *August*, had reached them from *Lloyd's* coffee house; and they express their regret at the event, as, if she had arrived at *Bourdeaux* in the common course of time, she would, in all probability, have been, ere that time, safe in *Philadelphia*, with a cargo

(Adams *v.* The Pennsylvania Insurance Company.

of brandy not costing more than two hundred and thirty francs, if so much. Upon this state of things, the plaintiff is entitled to recover, 1. Because, an *entire voyage* was broken up, in a part of which, a contract existed for a cargo, on which an equivalent for freight would have been received. 2. Because, at the time of the loss, a cargo of specie was on board, which never reached the port of destination, and the equivalent for freight was lost. 1. That ideal, contingent results growing out of substantial possessions, are legitimate subjects of insurance, is well settled. *Barclay* v. *Cousins,* 2 *East.* 544. In *Grant* v. *Parkinson, Park on Ins.* 402, *Phillips on Ins.* 46, the plaintiff, who had a contract to supply the army with spruce beer, insured his profits on a cargo of molasses, and recovered. In *Eyre* v. *Glover,* 16 *East,* 218, the insurance was merely on *"profits,"* without stating what they were to grow out of. *Fosdick* v. *Norwich Marine Insurance Company,* 3 *Day,* 108. *Abbott* v. *Sebor,* 3 *Johns. Cas.* 39. *Tom* v. *Smith,* 3 *Caines' R.* 245, are all to the point that profits may be insured. In these cases there was something actually at risk, out of which the insurable interest was to arise. But where the insurance is on freight, even that is not a prerequisite. Insurance was effected on the freight of a ship chartered to go to *Tenneriffe,* and there take a cargo for the *West Indies.* She was lost on the voyage to *Tenneriffe,* before the cargo was taken on board. The interest was held to have commenced, and the assured recovered. *Thompson* v. *Taylor,* 6 *T. R.* 478. *Condy's Marsh.* 279. In that case there was a charter party; but it makes no difference whether the agreement to supply a vessel with a cargo or to pay a freight, be under seal, or in writing without seal, or only verbal. *M'Kenzie* v. *Shedden,* 2 *Campb.* 431. *Patrick* v. *Eams,* 3 *Campb.* 441. *Moses* v. *Pratt,* 4 *Campb.* 297. In *Montgomery* v. *Egginton,* 3 *T. R.* 362, freight was insured, valued at fifteen hundred pounds. There were goods on board, the freight of which would have been only five hundred pounds. The vessel was lost; and it was held, that an insurable interest in the whole had accrued. There the *whole cargo* had been *purchased.* But in *Truscott* v. *Christie,* 2 *Brod. & Bing.* 320, freight and passage money were insured from *India* to *Europe.* Before the alterations necessary to receive the passengers were completed, the ship was lost, and the underwriters were held liable for the freight and passage money, merely on the ground of a contract having been entered into. And, in *Parke* v. *Hebson,* a case cited by RICHARDSON, J., and not reported, where a seeking ship which was to go to several places, and no definite contract had been made for the whole amount of freight, was lost at *Jamaica,* with part of her cargo on board, the plaintiff recovered. The principle established by the cases cited and by those of *Hart* v. *The Delaware Ins. Co. Condy's Marsh,* 281, *Davidson* v. *Willasey,* 1 *Maule & Selw.* 313. *Curling* v. *Long,* 1 *Bos. & Pull.* 636. *Davy* v. *Hallett, Condy's Marsh.* 278, and *Horncastle* v. *Suart,* 7 *East,* 400, is,

(Adams *v.* The Pennsylvania Insurance Company.)

that wherever there is a well grounded expectation that freight will be realised, it may be insured. It is laid down generally in *Phillips on Ins.* 44, that a person having a contract which may afford an emolument, has an insurable interest as soon as he has incurred expense, or taken steps towards the execution of the contract. The plaintiff alleges that every thing was done in this case necessary to give him an insurable interest. The negative propositions he has to combat are: 1. That there was nothing but a contingent contract. 2. That no purchase of a return cargo had been made. Every future event is contingent, and none more so than the result of a mercantile adventure. In the present instance there was nothing contingent which depended upon the will of the insurer. The contingencies depended upon events not under his control. The information of *Dowling and Sons*, was to direct the movements of the *Shamrock*. This direction was given, and thus, what was before uncertain, became fixed. The insurance was effected after the uncertainty had ceased. All was then resolved into the mere contingency of the arrival at *Bourdeaux*, a contingency connected with every case in which a cargo is not actually on board. As to no purchase having been made, there are many cases in which the same feature existed. Where there is a charter party, the right to recover is not denied; and yet the only difference between a chartered ship and another is, that the expectation is stronger. No case can be found of a vessel sailing on a continued voyage with part of a cargo on board, and an agreement for a cargo in a later stage of it, where a loss in the early part of the voyage has not been protected by the policy. The cases are either of a single voyage with a part only of the cargo, on board or a continued voyage with no cargo whatever on board or secured. If a cargo be secured, it is immaterial whether or not any was on board at the time of the loss. The loss of the ship is the total loss of the freight. *Marsh. on Ins.* 586. *Phill. on Ins.* 426. The *Louisa*, 1 *Dodson's Ady. Rep.* 319. *Hunter* v. *Prinsep*, 10 *East*, 378.

2. There was a cargo of twenty thousand dollars on board, which, though it did not fill the vessel, was sufficient to purchase a cargo to fill her. The *China* ships carry nothing but money. Freight on dollars is never on the bulk, but a per centage on the amount, no matter what space it occupies. If, instead of money the brig had had on board goods, on the voyage to *Bourdeaux*, the plaintiff would have been entitled to recover; and there is no difference, except that money pays freight per cent. and goods per ton. The freight lost upon this cargo of dollars from *Gibraltar* to *Bourdeaux*, by the agreement of the parties, was four thousand dollars. There is no evidence it was less, and it was valued at that sum. The parties were the judges of the value of the subject of insurance, and they have themselves fixed the standard.

*Binney* and *Chauncey* for the defendants.—In this case two questions arise. 1. Whether the plaintiff is entitled to recover his insurance in consequence of the expected cargo at *Bourdeaux*. 2.

(Adams *v.* The Pennsylvania Insurance Company.)

Whether he can recover the four thousand dollars insured, by reason of the five kegs of specie on board on the voyage from *Gibraltar* to *Bourdeaux.*

1. The law of insurance on *profits* may be, that the insured shall recover, if the goods are lost, though there would have been no profits had they arrived. This is certainly not the law of *England.* It may possibly be the law in *New York,* but it is not settled here. It may be, that a reasonable expectation of profits on a cargo *already shipped* on a voyage, is a good insurable interest; but a reasonable expectation of profits on a cargo *expected* to be shipped, never was, and never can be held to be an insurable interest. *Knox* v. *Woods,* 1 *Campb.* 543, is an answer to all such expectations of expectations. *Grant* v. *Parkinson, Barclay* v. *Cousin, Eyre* v. *Glover,* were all cases in which the insurance was on the profits of a cargo actually shipped. The insurance, in the present instance, was on a sober interest called freight, which must stand or fall by its own law, and that law is thoroughly settled. There is nothing fanciful about it. The only particular in which it appears to be so, is in regarding the owner of the ship and the owner of the goods as two persons, even where they are one, and allowing him to insure. Still, his interest is real. The policy may be valued or open, though it is usually a valued policy. If valued and a partial loss happen, it must be opened to ascertain the extent of the loss, which may be estimated after it has happened, as well as valued before. The current rate of freight, at a particular time, may be as easily ascertained as the current price of flour. A policy on profits is alone necessarily valued, and in practice always contains a special clause "free from average," &c. *Phillips on Ins.* 319. *Waln* v. *Thompson,* 9 *Serg. & Rawle,* 115. The question then is, whether the plaintiff had an insurable interest in the freight of the *Bourdeaux* cargo. Insurance on freight covers nothing but the freight of goods on board, and freight contracted to be paid, and which, or its equivalent, would be payable, whether goods be shipped or not. If the perils insured against prevent the owner from earning freight, in either of these cases, the insurer is liable, but not otherwise. Such a foundation of freight as a reasonable expectation of the ship owner bringing a cargo for himself; or a contract for a cargo to be furnished for himself; or the existence of a cargo belonging to him, for which he is sailing, is without warrant of law. The contract meant, is a contract by a third person to ship on freight, not to supply a cargo for the owner of the vessel, to ship for himself. It is a fixed principle, that the assured must have an interest at the risk of the perils in the policy, and it must continue and be subsisting, at the time of the loss. *Phillips on Ins.* 26, 27. The freight of goods shipped is such an interest. There is an inchoate right to freight, and, if not prevented by peril, the owner must raise freight out of the interest insured. Where freight is contracted to be paid, and no goods are shipped, there is no inchoate right to freight, but a right to damages

(Adams *v.* The Pennsylvania Insurance Company.)

for breach of contract. In reference to the latter description of claim, some judges, particularly Lord ELLENBOROUGH, have thought the cases had gone too far.   The difference between a valued and open policy, is nothing as relates to the question, whether the assured had an insurable interest in the freight.   A valuation is a mere estimate of the prime cost or amount of the thing insured to save the proof of actual cost or amount. It does not preclude the inquiry whether the thing was at risk at all, nor how much was at risk. . In the case of *Tonge* v. *Watts*, 2 *Stra.* 1251, decided in 1747, by Chief Justice LEE, no goods were on board; no contract of affreightment was entered into, and no recovery was had.   This case has never been questioned. 2 *Wash. C. C. Rep.* 350. It is the *Magna Charta* of the law, delivered by a great commercial lawyer. . If a reasonable expectation was sufficient, there was in that case, much more; the very goods were ready.   The goods were not only contracted for, but provided.   The case of *Montgomery* v. *Eggington*, 3 *D. & E.* 362, decided by Lord KENYON in 1789, in which the plaintiff recovered, is shortly and unsatisfactorily reported.   Whether there was a contract of affreightment, does not appear, and the reasons of the court are not given.   It is understood to have been a case of contract.   If it was not, it is not law, for nothing is better settled, than that the valuation of an entire subject does not entitle the insured to a recovery for the whole, if part only is on board. . *Thompson* v. *Taylor*, 6 *D. & E.* 478, in 1795, was the case of a charter party for a round voyage, and for an entire freight.   The vessel was lost after she had sailed under the contract, and before she had taken her cargo on board.   The plaintiff recovered, because . the right under the contract had begun.   This was the first case in which a charter party or contract of affreightment was allowed to stand in the place of actual shipment, and it has been thought to have gone to the very verge of the law of insurance.   The right to freight for the use of the ship, was put on the same foot as the right to freight. for the carriage of goods. ' *Atty* v. *Lindo*, 4 *Bos. & Pull.* 236, before Sir James MANSFIELD, was also the case of a charter party, not differing from the last, except that the goods were carried on part of the voyage, and part was delivered, but the contract gave no right to freight unless all was delivered; and, therefore, there was a total loss.   *Horncastle* v. *Suart*, 7 *East*, 400, decided by Lord ELLENBOROUGH in 1808, went upon the same principle.   In *Forbes* v. *Cowie*, 1 *Campb.* 520, 522, in 1808, there was no charter party, and the liability was held to extend only to the goods on board.   *M'Kenzie* v. *Shedden*, 2 *Campb.* 431, in 1810, was also the case of a charter party.   In *Forbes* v. *Aspinall*, 13 *East*, 323, (1811,) Lord ELLENBOROUGH held that where there is no contract, the assured could only recover for the freight of the goods shipped, notwithstanding it was a valued policy; and that probability or reasonable expectation, furnished no ground for a recovery.   Upon the same principles the case of *Patrick* v. *Eams*, 3 *Campb.*

(Adams *v.* The Pennsylvania Insurance Company.)

441, was decided in 1813. In *Davidson* v. *Willasey,* 1 *Maule, & Selw.* 313, the vessel sailed under a charter party from *Liverpool* to *Jamaica,* and then to *London.* The freight, valued at four thousand pounds, was insured. She arrived out and took in half a cargo, the remainder being ready. The vessel was stranded, and a total loss under the policy was incurred. *Truscott* v. *Christie,* 2 *Brod. & Bing.* 320, in 1820, is the last *English* case on the subject. There, a verbal agreement was made and expenses were incurred, but the vessel was disabled by a gale before sailing, and it was decided to be a total loss. PARK, J., said, he thought *Thompson* v. *Taylor,* the first case of contract, went too far. Here is an unbroken current of authorities in support of our position, which has never been shaken. The expression of Lord C. J. EYRE, relied upon on the opposite side, as to a well grounded expectation, must have meant a well grounded expectation that freight would be raised upon goods on board. If he meant an expectation of goods not on board, he cites no authority for his position, and none can be cited. The *American* cases, *Livingston* v. *The Columbian Ins. Co.* 3 *Johns.* 49. *Hart* v. *The Delaware Ins. Co.* 2 *Wash. C. C. Rep.* 346. *Riley* v. *Hartford Ins. Co.* 2 *Conn. Rep.* 368, are to the same effect. In this state of the law, the expected cargo at *Bourdeaux* is out of the question. There was no contract of charter party or affreightment; no goods were on board; and a review of the correspondence will show, that no goods were ever contracted to be provided for the owner, nor was there any breach of orders in not providing them.

2. Can the plaintiff recover the four thousand dollars by reason of the five kegs of specie on board when the *Shamrock* sailed from *Gibraltar?* The voyage was one and indivisible. The valuation was upon an entire interest in the freight expected to be made during the whole voyage; and the insurance was upon an entire premium. The intention was to value the freight, which would be on board during the voyage from *Bourdeaux* to *Philadelphia,* at four thousand dollars, and not the freight of the specie. It will hardly be pretended, that in point of value, the freight of five kegs from *Gibraltar* to *Bourdeaux,* is equal to the freight of four hundred pipes from *Bourdeaux* to *Philadelphia.* If the specie is to pay freight per cent. and not by bulk, it must fall infinitely short of four thousand dollars. The value of the dollars is not the question. They were insured and the loss paid. It is the value of the carriage of the dollars, which is to be regarded. If the plaintiff meant to value that at four thousand dollars, he did not say so, and if he has done it without the agreement of the defendants, it is a fraudulent valuation, and void. *Phill. on Ins.* 304, 306.

But there is another view to be taken of this case. If the plaintiff had an insurable interest, there has been no total loss of the freight; not even a technical total loss. If the ship is injured and unable to proceed, the owner is bound, if he can, to carry on the goods

(Adams *v.* The Pennsylvania Insurance Company.)

by another ship and earn his freight. If he cannot, there may be either a partial or a total loss of the freight. There is no evidence to show that the plaintiff could not carry the dollars saved to *Bourdeaux*, nor that he could not carry the brandy to *Philadelphia*, and it lies upon him to show that he could not. *Carter* v. The *American Ins. Co.* 7 *Cowen*, 364. *Saltus* v. The *Ocean Ins. Co.* 12 *Johns.* 107. *Bradhurst* v. The *Col. Ins. Co.* 9 *Johns.* 17.

HUSTON, J. (after stating the case) delivered the opinion of the court as follows:

It was admitted, that the owner of a vessel and cargo may insure on freight when carrying his own goods; but it is contended, that the policy never attached in this case. It was settled long ago, that although the goods are ready to be loaded, yet if none of them are actually on board, and the vessel is driven from her moorings and lost, there can be no recovery on an insurance on freight. 2 *Stra.* 1251. But it has also been settled, that if a vessel is chartered to go to T., and take in a load and carry it to B., and she is lost on her voyage to T., and never takes in any load, there can be a recovery on the policy on freight, on the ground, it would seem, that the contract to sail to T., and take in the lading and carry it to B., was one entire contract, and having set sail, the policy attached. 6 *D. & E.* 478. This ship sailed under a charter party. It would seem to have been settled since, that if the vessel sails under a contract, or being in a port, an express contract is made to load her, and she is fitted to take in such load, and is lost, there can be a recovery on the policy on freight. Indeed, there seems to be no doubt that a recovery may be had on such policy, if the vessel is loaded, though she has not sailed; or, if she has an express contract for a load, though none of it is on board; or, if she has set sail for the place at which she is to load, or if being at the place of loading, her owners have commenced fitting her, to receive and carry the loading *contracted to be carried.* The defendants say no case has gone beyond this, and the plaintiff insists, that if there is a reasonable expectation of a load at a port, and a vessel sails for that port to take it in, the policy attaches, and if the vessel is lost by the perils insured against, the sum insured will be recovered.

Most of the cases on this subject have been cited in the argument, and I have carefully examined them, and have come to the conclusion, that according to the decided cases, the defendants are not liable in this case.

It has been contended that the plaintiff can recover though there was no contract and no load, in other words, that a gaming policy is good in this state, as it is said to be in *New York.* The only decided cases are otherwise. Since those decisions, the law has been considered by both the insured and insurer, to be otherwise. Contracts are predicated on the law as established, that there must be something in which the insured has an interest, or the contract is void. It might

(Adams *v.* The Pennsylvania Insurance Company.)

work great injustice to decide on other principles, and I am not able to discern any good result to be expected from changing the law on this subject. The case in 13 *East, Forbes* v. *Aspinall,* was of a vessel loaded with goods, as was fully proved by the event, sufficient to purchase a return cargo, and there was no question but they would be applied to purchase one, or that when purchased, it would be carried in that ship. There was an insurance on her freight; part of her outward cargo was sold; a part of her return cargo was loaded, and she was wrecked; and a recovery was had only for the freight of so much of the return cargo as was loaded; and yet there was reasonable ground to expect a full load. The phrase reasonable ground to expect a load, was used by an eminent judge, but not in a cause of insurance on freight; it was a mere *obiter dictum.* The last *English* case, 2 *Brod. & Bing.* 320, will not help the plaintiff, nor will *Parke* v. *Hebson* there cited. The note of this latter case is too short and too defective in precision to afford any certain light; the phrase " he produced letters from merchants and plantation owners respecting the intended shipments," is very vague, but we see that those letters must have been precise, and amounted to a contract; for PARK, J., says, in *Parke* v. *Hebson, the contract* was only deducible from letters; and RICHARDSON, J., before whom it would seem that cause was tried, says, " the question is, whether there was a subsisting contract, under which the party could have recovered, but for its interruption by the perils of the sea." That there is no magic in a charter party is clear from the case of *Parke* v. *Hebson.* And the whole case goes on the ground, that if there is an express contract, though no charter party, nay, though only by parol, freight may be insured, but it gives no colour to the doctrine that any thing less than loading the goods or an express contract, will have that effect.

The case in 2 *Conn. Rep.* 368, is full and express to the same point. It is almost this very case. It does not seem to me in principle to vary from or go beyond the law as settled before.

In this case, from the plaintiff's own letters the arrival of two or three ships at *Bourdeaux* for brandy, before the *Shamrock,* might, and probably would have raised the price above the limit fixed by the plaintiff; nay, political news might have had that effect, and then the ship was to load on freight, if she could get it, or go to *Russia.* There was no cargo purchased for her; there was no contract on which any person was liable, if she was not loaded: it is not within any of the decisions or any settled principle of decision, and the judgment must be entered for the defendants.

Judgment for the defendants.